## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | CLASS ACTION |
| PARK STERLING CORPORATION, LESLIE M. BAKER, JR., WALTER C. AYERS, JR., LARRY W. CARROLL, JAMES C. CHERRY, JEFFREY S. KANE, THOMAS B. HENSON, JEAN E. DAVIS, PATRICIA C. HARTUNG, KIM STUART PRICE, BEN R. RUDISILL II, GRANT S. GRAYSON, ROBERT G. WHITTEN, and SOUTH STATE CORPORATION, | |
| Defendants. | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on April 27, 2017 (the "Proposed Transaction") pursuant to which Park Sterling Corporation ("Park Sterling" or the "Company") will be acquired by South State Corporation ("South State").

2. On April 26, 2017, the Board caused Park Sterling to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, shareholders of Park Sterling will receive 0.14 shares of South State stock for each share of Park Sterling common stock.

3. On July 14, 2017, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Park Sterling common stock.

9. Defendant Park Sterling is a North Carolina corporation and maintains its principal executive offices at 1043 E. Morehead Street, Suite 201, Charlotte, North Carolina 28204. The Company is a bank holding company and the parent of Park Sterling Bank. Park Sterling's

common stock is traded on the NasdaqGS under the ticker symbol "PSTB."

10. Defendant Leslie M. Baker, Jr. ("Baker") is a director and Chairman of the Board of the Company. According to the Company's website, Baker is Chair of the Executive Committee and a member of the Audit Committee and the Compensation and Development Committee.

11. Defendant Walter C. Ayers, Jr. ("Ayers") has served as a director of the Company since August 2010. According to the Company's website, Ayers is a member of the Executive Committee, the Compensation and Development Committee, and the Loan and Risk Committee.

12. Defendant Larry W. Carroll ("Carroll") has served as a director of the Company since 2006. According to the Company's website, Carroll is Chair of the Audit Committee and a member of the Executive Committee and the Nominating and Governance Committee.

13. Defendant James C. Cherry ("Cherry") is a director and Chief Executive Officer ("CEO") of the Company. According to the Company's website, Cherry is a member of the Executive Committee and the Loan and Risk Committee.

14. Defendant Jeffrey S. Kane ("Kane") has served as a director of the Company since August 2010. According to the Company's website, Kane is Chair of the Loan and Risk Committee and a member of the Trust and Investment Management Committee and the Executive Committee.

15. Defendant Thomas B. Henson ("Henson") has served as a director of the Company since 2006. According to the Company's website, Henson is a member of the Audit Committee and the Trust and Investment Management Committee.

16. Defendant Jean E. Davis ("Davis") has served as a director of the Company since March 2011. According to the Company's website, Davis is Chair of the Compensation and Development Committee and a member of the Audit Committee and the Executive Committee.

17. Defendant Patricia C. Hartung ("Hartung") has served as a director of the Company since November 2011. According to the Company's website, Hartung is a member of the Nominating and Governance Committee and the Loan and Risk Committee.

18. Defendant Kim Stuart Price ("Price") has served as a director of the Company since October 2012. According to the Company's website, Price is Vice Chairman of the Board and a member of the Loan and Risk Committee.

19. Defendant Ben R. Rudisill II ("Rudisill") has served as a director of the Company since October 2012. According to the Company's website, Rudisill is a member of the Audit Committee and the Nominating and Governance Committee.

20. Defendant Grant S. Grayson ("Grayson") has served as a director of the Company since 2016. According to the Company's website, Grayson is a member of the Loan and Risk Committee and the Trust and Investment Management Committee.

21. Defendant Robert G. Whitten ("Whitten") has served as a director of the Company since January 2016. According to the Company's website, Whitten is a member of the Audit Committee and the Trust and Investment Management Committee.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

23. Defendant South State is a South Carolina corporation and maintains its principal executive offices at 520 Gervais Street, Columbia, South Carolina 29201. South State is a bank holding company for its subsidiary, South State Bank. South State's common stock is traded on the NasdaqGS under the ticker symbol "SSB."

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public

stockholders of Park Sterling (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25. This action is properly maintainable as a class action.

26. The Class is so numerous that joinder of all members is impracticable. As of April 26, 2017, there were approximately 53,221,201 shares of Park Sterling common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and the Proposed Transaction

31.  Park Sterling is the holding company for Park Sterling Bank.

32.  The Company is a regional community-focused financial services company with $3.2 billion in assets and is the largest community bank headquartered in the Charlotte area.

33.  Park Sterling has fifty-seven banking offices across the Carolinas and into North Georgia, as well as in Richmond, Virginia.

34.  Park Sterling Bank serves professionals, individuals, and small and mid-sized businesses by offering a full array of financial services, including deposit, mortgage banking, cash management, consumer and business finance, capital markets, and wealth management services.

35.  On January 26, 2017, Park Sterling issued a press release wherein it reported its operating results for the fourth quarter and full year 2016. The Company reported that, in 2016, net income increased $3.3 million from 2015 to a record $19.9 million, or $0.38 per share. Adjusted net income was $27.2 million compared to $17.8 million in 2015, an increase of $9.4 million or 53%, and adjusted earnings per share increased to $0.52 from $0.40 in 2015, an increase of 29%. With respect to the results, Individual Defendant Cherry commented:

> We are very pleased with Park Sterling's results for the 2016 fourth quarter and full year which continue to confirm the attractiveness of a regional community bank that delivers high quality products and services through exceptionally talented and experienced in-market banking professionals[.] Our distinctive value proposition is clearly resonating with customers. They are embracing our capabilities and rewarding us with strong growth in loans, deposits and revenue, which enables us to deliver increasing earnings and returns for our shareholders, while offering an engaging work environment for our employees.

36.  On April 27, 2017, Park Sterling issued a press release wherein it reported its operational results for the first quarter of 2017. The Company reported that net income was $7.5 million, or $0.14 per share, compared to $5.3 million, or $0.10 per share, in the quarter ended

6

December 31, 2016. Adjusted net income was $7.5 million, or $0.14 per share, compared to $7.3 million, or $0.14 per share in the prior quarter. With respect to the results, Individual Defendant Cherry commented:

> We are very pleased with our results for the first quarter of 2017. Our priorities are to deliver high quality products and services through exceptionally talented and experienced in-market banking professionals and to continue to improve profitability and returns[.] Our distinctive value proposition is rewarding us with attractive growth in loans, deposits and revenue, which enables us to deliver increasing earnings and returns for our shareholders.

37. Nevertheless, the Individual Defendants caused the Company to enter into the Merger Agreement, pursuant to which Park Sterling will be acquired by South State for inadequate consideration.

38. To the detriment of the Company's stockholders, the terms of the Merger Agreement substantially favor South State and are calculated to unreasonably dissuade potential suitors from making competing offers.

39. For example, the Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals. Sections 6.9(a) and (j) of the Merger Agreement provide:

> (a) The Company shall not, shall cause its Subsidiaries and its and their respective officers, directors and employees not to, and shall use reasonable best efforts to cause its and their respective agents, investment bankers, financial advisors, attorneys, accountants and other retained representatives (each, together with such officers, directors and employees, a "Representative") not to, directly or indirectly, (i) initiate, solicit, knowingly encourage or knowingly facilitate any inquiries or the making of any proposal or offer with respect to, or a transaction to effect, a merger, reorganization, share exchange, consolidation, sale of assets, sale of shares of capital stock (including by way of tender offer), business combination,

recapitalization, liquidation, dissolution or similar transaction involving the Company or any of its Subsidiaries that, if consummated, would constitute an Alternative Transaction (any of the foregoing inquiries, proposals or offers being referred to herein as an "Acquisition Proposal"), (ii) participate in any discussions with or provide any confidential information or data to any Person (or Representative of such Person) relating to an Acquisition Proposal or Alternative Transaction, or engage in any negotiations concerning an Acquisition Proposal or Alternative Transaction, or knowingly facilitate any effort or attempt to make or implement an Acquisition Proposal or Alternative Transaction, (iii) approve or execute or enter into any letter of intent, agreement in principle, merger agreement, asset purchase or share exchange agreement, option agreement or other Contract related to any Acquisition Proposal or Alternative Transaction (an "Acquisition Agreement") or (iv) propose or agree to do any of the foregoing. The Company shall be responsible for any violation of this Section 6.9 by its Representatives.

(j) The Company agrees that it (i) will and will cause its Subsidiaries, and its and their Representatives to, cease immediately and terminate any and all existing activities, discussions or negotiations with any third parties conducted heretofore with respect to any Acquisition Proposal or Alternative Transaction or similar transaction and (ii) will not release any third party from, or waive any provisions of, any confidentiality or standstill agreement to which it or any of its Subsidiaries is a party with respect to any Acquisition Proposal or Alternative Transaction, and will enforce the terms thereof and, to the extent applicable, request from such third parties the return or destruction of any confidential information of the Company provided thereunder.

40. Further, the Company must promptly advise South State of any proposals or inquiries received from other parties. Section 6.9(d) of the Merger Agreement states:

(d) The Company shall notify Parent promptly (but in no event later than twenty-four (24) hours) after receipt of any Acquisition Proposal, or any request for nonpublic information relating to the Company or any of its Subsidiaries by any Person that informs the Company or any of its Subsidiaries that it is considering making, or has made, an Acquisition Proposal, or any inquiry from any Person seeking to have discussions or negotiations with the Company that is reasonably likely to lead to a possible Acquisition Proposal or Alternative Transaction. Such notice shall be made orally and confirmed in writing, and shall indicate the identity of the Person making the Acquisition Proposal, inquiry or request and the material terms and conditions of any inquiries, proposals or offers (including a copy thereof if in writing and any related documentation or correspondence). The Company shall also promptly, and in any event within twenty-four (24) hours, notify Parent, orally and in writing, if it enters into discussions or negotiations concerning any Acquisition Proposal or Alternative Transaction or provides nonpublic information or data to any Person in accordance with Section 6.9(c) and keep Parent reasonably informed of the status and terms of any such proposals, offers, inquiries, discussions

8

or negotiations on a current basis, including by providing a copy of all material documentation or correspondence relating thereto.

41. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants South State a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.9(f) of the Merger Agreement provides:

> (f) Notwithstanding anything in this Agreement to the contrary, prior to the time the Company Shareholder Approval is obtained, the board of directors of the Company may make a Change in Company Recommendation if and only if (i) an unsolicited bona fide written Acquisition Proposal (that did not result from a breach of this Section 6.9) is made to the Company by a third party, and such Acquisition Proposal is not withdrawn, (ii) the board of directors of the Company has concluded in good faith (after consultation with its outside legal counsel and financial advisors) that such Acquisition Proposal constitutes a Superior Proposal, (iii) the board of directors of the Company has concluded in good faith (after consultation with its outside legal counsel) that failure to do so would be reasonably likely to violate the directors' fiduciary duties under applicable Law, (iv) prior to effecting the Change in Company Recommendation, five (5) Business Days shall have elapsed since the Company has given written notice to Parent advising Parent that the Company intends to take such action and specifying in reasonable detail the reasons therefor, including the terms and conditions of, and the identity of the person making, any such Acquisition Proposal that is the basis of the proposed action (a "Company Notice of Recommendation Change") (it being understood that any amendment to any material term of such Acquisition Proposal shall require a new Company Notice of Recommendation Change, except that, in such case, the five (5) Business Day period referred to in this clause (iv) and in clauses (v) and (vi) shall be reduced to three (3) Business Days following the giving of such new Company Notice of Recommendation Change), (v) during such five (5) Business Day period, the Company has considered, and engaged in good-faith discussions with Parent regarding, any adjustment or modification of the terms of this Agreement proposed by Parent and (vi) the board of directors of the Company, following such five (5) Business Day period, again reasonably determines in good faith (after consultation with its outside legal counsel, and taking into account any adjustment or modification of the terms of this Agreement proposed by Parent) that such Acquisition Proposal nonetheless continues to constitute a Superior Proposal and that failure to make a Change in Company Recommendation would be reasonably likely to violate the directors' fiduciary duties under applicable Law. For purposes of this Agreement, "Superior Proposal" means an unsolicited, bona fide written Acquisition Proposal made by a third Person (or group of Persons acting in concert within the meaning of Rule 13d-5 under the Exchange Act) to acquire, directly or indirectly, pursuant to a tender offer, exchange offer, merger,

consolidation or other business combination or acquisition transaction, (A) all or substantially all of the assets of the Company or (B) all of the outstanding voting securities of the Company and which the board of directors of the Company has in good faith determined (taking into account, among other things, (1) its consultation with its outside legal counsel and its financial advisors and (2) the terms and conditions of such Acquisition Proposal and this Agreement (as it may be proposed to be amended by Parent)), to be more favorable, from a financial point of view, to the Company's shareholders than the Transactions (as it may be proposed to be amended by Parent) and to be reasonably capable of being consummated on the terms proposed, taking into account all other legal, financial, timing, regulatory and other aspects of such Acquisition Proposal and the Person making the proposal.

42. Further locking up control of the Company in favor of South State, the Merger Agreement provides for a "termination fee" of $25 million, payable by the Company to South State if the Individual Defendants cause the Company to terminate the Merger Agreement.

43. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

44. Additionally, South State entered into voting agreements with Park Sterling's directors and named executive officers, pursuant to which they have agreed to vote their Company shares in favor of the Proposed Transaction. Accordingly, such shares are already locked up in favor of the merger.

45. The consideration to be provided to plaintiff and the Class in the Proposed Transaction is inadequate.

46. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

47. The merger consideration also fails to adequately compensate the Company's stockholders for the significant synergies that will result from the Proposed Transaction.

48. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

49. Meanwhile, certain of the Company's officers and directors stand to receive significant benefits as a result of the Proposed Transaction.

50. For example, South State entered into a consulting agreement with Individual Defendant Cherry, and entered into employment agreements with Donald K. Truslow, Park Sterling's Chief Financial Officer, and Bryan F. Kennedy III, Park Sterling's President, pursuant to which they will be employed by South State following the close of the merger.

51. Additionally, Individual Defendant Cherry and one other Board member will be appointed to the South State board of directors following the merger.

52. Moreover, on April 26, 2017, Park Sterling entered into an amended and restated employment agreement with Nancy J. Foster, an Executive Vice President and Park Sterling's Chief Risk Officer, pursuant to which she will continue to serve as Executive Vice President and Chief Risk Officer and will continue to receive her annual base salary of $360,000.

***The Registration Statement Omits Material Information, Rendering It False and Misleading***

53. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

54. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading.

55. First, the Registration Statement omits material information regarding Park Sterling's financial projections, South State's financial projections, and the analyses performed by the Company's financial advisor, Stephens Inc. ("Stephens").

56. With respect to Park Sterling's projections, while the Registration Statement discloses estimated earnings per share ("EPS") and total assets for fiscal year 2017, the Registration Statement fails to disclose EPS and total assets for years 2018 through 2023, as well as any other projection line items for the Company, including, *inter alia*: income; dividends; book value; loans; total deposits; total equity; return on average assets; return on average equity; and free cash flow and its constituent line items.

57. With respect to South State's projections, while the Registration Statement discloses South State's estimated EPS for fiscal year 2017, it fails to disclose EPS for years 2018 through 2023, as well as any other projection line items for South State, including, *inter alia*: total assets; income; dividends; book value; loans; total deposits; total equity; return on average assets; return on average equity; and cash flow and its constituent line items.

58. With respect to Stephens' *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the financial forecasts and projections relating to the earnings and assets of Park Sterling prepared, and provided to Stephens, by Park Sterling management; (ii) the estimated free cash flows for Park Sterling for years 2018 to 2021 and the corresponding definition and constituent line items; and (iii) Park Sterling's implied terminal value.

59. With respect to Stephens' *Relative Contribution Analysis*, the Registration Statement fails to disclose: (i) the balance sheet data for Park Sterling and South State as of March 31, 2017; and (ii) the operating income estimates for Park Sterling and South State.

60. With respect to Stephens' *Pro Forma Financial Impact Analysis*, the Registration Statement fails to disclose: (i) the projected income statement and balance sheet information of Park Sterling and South State; (ii) the balance sheet estimates as of December 31, 2017 for Park Sterling and South State; (iii) the operating income estimates for Park Sterling and South State;

(iv) the income growth rates provided by South State management; and (v) the pro forma assumptions provided by South State management.

61. With respect to Stephens' *Selected Public Companies Analyses*, the Registration Statement fails to disclose the individual multiples and financial metrics for the companies observed by Stephens in the analyses.

62. With respect to Stephens' *Selected Transaction Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Stephens in the analysis.

63. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

64. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Park Sterling's Reasons for the Merger; Recommendation of the Park Sterling Board of Directors"; (iii) "Opinion of Park Sterling's Financial Advisor"; and (iv) "Certain South State and Park Sterling Unaudited Prospective Financial Information."

65. Second, the Registration Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

13

66. Specifically, the Registration Statement indicates that two directors of the Board will serve on the board of directors of South State upon completion of the Proposed Transaction. Further, South State entered into a consulting agreement with Individual Defendant Cherry and "replacement agreements" with certain other members of the Company's management members. The Registration Statement, however, fails to disclose the timing and nature of all communications regarding future employment and directorship of, and consulting agreements with, Park Sterling's officers and directors, including who participated in all such communications.

67. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

68. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Park Sterling's Reasons for the Merger; Recommendation of the Park Sterling Board of Directors"; and (iii) "Interests of Park Sterling's Directors and Executive Officers in the Merger."

69. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Park Sterling's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Park Sterling**

70. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

71. The Individual Defendants disseminated the false and misleading Registration

Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Park Sterling is liable as the issuer of these statements.

72. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

73. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

74. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

75. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

76. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

77. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and South State

78. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

79. The Individual Defendants and South State acted as controlling persons of Park Sterling within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Park Sterling and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

80. Each of the Individual Defendants and South State was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

81. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

82. South State also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

83. By virtue of the foregoing, the Individual Defendants and South State violated Section 20(a) of the 1934 Act.

84. As set forth above, the Individual Defendants and South State had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: August 15, 2017

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Tel.: (302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Tel.: (484) 324-6800

**WARD BLACK LAW**
By: /s/Janet Ward Black
Janet Ward Black
NC Bar No. 12869
Nancy Meyers
NC Bar No. 23339
208 West Wendover Avenue
Greensboro, NC 27401
Tel.: (336) 510-2014
Fax: (336) 510-2181
jwblack@wardblacklaw.com

*Attorneys for Plaintiff*

18